# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48963

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, January 2022 Term |
| | ) | |
| v. | ) | Opinion Filed: April 4, 2022 |
| | ) | |
| TALON SCOTT ROSS, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. John T. Mitchell, District Judge.

The decision of the district court is <u>reversed</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant, Talon Scott Ross. Andrea W. Reynolds argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent, State of Idaho. Kacey L. Jones argued.

_____

STEGNER, Justice.

Talon Ross appeals from a district court's order revoking his probation and imposing his previously suspended sentence for a robbery he pleaded guilty to in 2011. In 2019, Ross was charged with violating the terms of his probation by allegedly committing the crimes of petit theft and injury to a child. At an evidentiary hearing on the probation violation allegations, the district court found that, despite Ross introducing a judgment of acquittal for the petit theft charge, the State had proved by a preponderance of the evidence that Ross had committed petit theft. Additionally, the district court found by a preponderance of evidence that Ross had committed injury to a child. The Idaho Court of Appeals affirmed the district court's order revoking Ross's probation and imposing his sentence. Ross petitioned this Court for review, which was granted. For the reasons that follow, we vacate the district court's order revoking Ross's probation and remand for further proceedings.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Ross pleaded guilty to robbery in violation of Idaho Code sections 18-6501, 18-6502, and 18-204. The district court sentenced Ross to a fixed term of three years followed by an indeterminate term of seven years. The district court retained jurisdiction and ordered Ross to complete a correction alternative placement program (CAPP, or "rider"). After completing his rider, the district court suspended Ross's sentence and placed him on supervised probation for a term of three years. One of Ross's probation conditions required that he "commit no violations of any law of the United States of America, or of any law of any other country, or of any law of any state, county, city, or other political subdivision."

Ross was found to have committed four probation violations between 2012 and 2017.[1] Each time the district court retained jurisdiction and suspended Ross's sentence, imposing a term of either three or four years of supervised probation.

On November 15, 2019, Ross's probation supervisor alleged that Ross had once again violated his probation—this time by committing the crimes of petit theft and injury to a child. Ross denied both allegations. An evidentiary hearing took place on January 27, 2020, during which several witnesses testified regarding the allegations.

The following facts were elicited regarding Ross's petit theft charge. On November 13, 2019, Brian Lux, a part owner of Best Avenue Vapor in Coeur d'Alene, became aware of a possible theft at the "vape store" by reviewing video surveillance footage. Lux testified he observed Emily Vanvalkenberg, a temporary employee of the vape store, and Ross enter the store. According to Lux, Ross "reached behind inside the display case and grabbed a device and put it in his pocket . . . and [Ross] then grabbed a jar of Kratom."[2] Lux also observed Ross take another vaping device and put it in his pocket. Lux had not given Vanvalkenberg or Ross permission to take the items and neither Vanvalkenberg nor Ross had paid for the items.

Officer Jacob Brazle responded to the theft allegations. Brazle reviewed the surveillance video and observed Ross take two items from the store. Brazle later questioned Ross, who admitted that he took the items from the store. Roxanne Bujko, an employee of the vapor store who was working at the time of the alleged theft, testified that Ross and Vanvalkenberg came into the shop

---

[1] These violations are not relevant to this appeal.

[2] Kratom is an herbal supplement "which causes stimulant and sedative effects in different doses." *Kratom*, UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, https://www.dea.gov/ factsheets/kratom (last visited Dec. 17, 2021). Kratom is not an illegal drug and is commonly sold at shops like Best Avenue Vapor.

on the evening of November 13, 2019, in order for Vanvalkenberg to retrieve her belongings. Ross helped Bujko by placing items on shelves that were out of her reach; to thank him, Bujko paid for a "vape stick" and gave it to Ross. Vanvalkenberg testified next, stating that Lux had given her permission to take a container of Kratom.

Finally, Ross testified in his own defense. According to Ross, he went to Best Avenue Vapor with Vanvalkenberg, and while he was there he helped Bujko stock the shelves with some products. In return, Bujko gave Ross a vape stick. Ross also testified that Vanvalkenberg had asked him to retrieve a jar of Kratom from the shelf; Vanvalkenberg previously stated that she had permission to take the Kratom from Lux. Ross clarified that he told Brazle he took the items from the store with permission. Ross was tried by a jury for the petit theft charge in a separate criminal proceeding; however, the jury acquitted Ross of the charge. The defense admitted the judgment of acquittal at the probation violation evidentiary hearing.

Regarding the injury to a child charge, the following evidence was presented the district court during the probation violation hearing: on November 14, 2019, Brandy Traxler was waiting in the lobby of an attorney's office in Coeur d'Alene when she saw "two little girls [on] 3rd Avenue running across the street." The older child, about three years old, was wearing a "pink T-shirt [] and no bottoms, no diaper, no shoes, [and] no pants," while the younger child, about one year old, "only had on a saturated diaper that was hanging down past her knees," with no shoes on. Traxler ushered the children inside the office and warmed them up, as it was somewhere between 30 and 40 degrees outside that day.

Law enforcement officers and child protective services (CPS) responded to the attorney's office. Shadra Aragon, a CPS case worker, knew both Ross and Taylor Tottenham, the children's mother, from a previous referral she had received on November 8, 2019. On November 13, 2019, Aragon went to Ross's home to speak with him and Tottenham about a prior incident where the girls had gone outside through the sliding glass door. Ross and Tottenham explained to Aragon that this was an accident and that it would not happen again. Aragon responded again the following day, November 14, when she learned that the girls had crossed the street alone. Once at Ross's residence with Officer Henry Dunham, Aragon and Dunham knocked on the door for

3

approximately five minutes[3] before Ross's roommate answered the door.

Ross and Tottenham eventually came to the door, and both appeared to have just awakened. Both Ross and Tottenham were upset that the girls were missing. The State admitted photographs from Dunham's body camera showing both girls inside the attorney's office.

After the close of evidence at the probation violation hearing, Ross argued that the State had failed to prove both alleged probation violations. First, Ross argued that because a jury had acquitted him of petit theft, and because Bujko and Vanvalkenberg testified that Ross had permission to take a vape pen and the Kratom, the State had failed to prove that Ross committed the crime of petit theft "even to a probable cause standard." Next, Ross argued that the State failed to show that Ross "willfully" permitted his children to be in a dangerous situation.

The district court found that "both allegations [] have been proven by a preponderance of the evidence." The district court first concluded that Ross had committed petit theft because Ross's claim that he took the items from the vapor store but did not steal them was "inherently incredible." Next, the district court concluded that Ross had a "special relationship" with the children and that the State had proved the elements of the injury to a child statute "certainly on a more probable than not basis." The district court then imposed Ross's original sentence on the underlying 2011 robbery, which was three years fixed followed by seven years indeterminate with credit for time served.

Ross timely appealed. The Idaho Court of Appeals affirmed the district court's decision to impose his original sentence. *State v. Ross*, No. 47771, 2021 WL 1651295, at *1 (Idaho Ct. App. Apr. 28, 2021). Ross petitioned this Court for review, which was granted.

## II.    STANDARD OF REVIEW

> "When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Chernobieff*, 161 Idaho 537, 539, 387 P.3d 790, 792 (2016) (quoting *State v. Lute*, 150 Idaho 837, 839, 252 P.3d 1255, 1257 (2011)). "This Court is not merely reviewing the correctness of the Court of Appeals' decision; rather, this Court is hearing the matter as if the case were on direct appeal from the trial judge's decision." *Gilpin-Grubb v. State*, 138 Idaho 76, 79, 57 P.3d 787, 790 (2002).

*Marsalis v. State*, 166 Idaho 334, 339, 458 P.3d 203, 208 (2020).

---

[3] Aragon testified that she and Dunham knocked on the door for approximately fifteen to twenty minutes. Dunham's testimony was that they knocked for approximately five minutes. The district court concluded that Dunham's testimony was likely more accurate because he was "emotionally detached" from the case.

Review of a probation revocation proceeding involves a two-step analysis. *State v. Sanchez*, 149 Idaho 102, 105, 233 P.3d 33, 36 (2009); *State v. Knutsen*, 138 Idaho 918, 923, 71 P.3d 1065, 1070 (Ct. App. 2003). First, it is determined whether the terms of probation have been violated. *Sanchez*, 149 Idaho at 105, 233 P.3d at 36. If they have, it is then determined whether the violation justifies revocation of the probation. *Knutsen*, 138 Idaho at 923, 71 P.3d at 1070.

*State v. Garner*, 161 Idaho 708, 710, 390 P.3d 434, 436 (2017).

With regard to the first step, a district court may revoke probation only upon evidence that the probationer has violated probation . . . . A court's finding that a violation has been proved will be upheld on appeal if there is substantial evidence in the record to support the finding. . . .

As to the second step, the decision whether to revoke a defendant's probation for a violation is within the discretion of the district court. Thus, we review a district court's decision to revoke probation under an abuse of discretion standard.

*Id.* (quoting *State v. Knutsen*, 138 Idaho 918, 923, 71 P.3d 1065, 1070 (Ct. App. 2003)). To determine whether a trial court has abused its discretion, "this Court asks 'whether the district court (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.'" *State v. Garcia-Ongay*, 169 Idaho 1, 5, 490 P.3d 1, 5 (2021) (quoting *State v. Hess*, 166 Idaho 707, 709, 462 P.3d 1171, 1173 (2020)).

### III.    ANALYSIS

In order to revoke a defendant's probation, it must be proved that a violation of the terms of probation has occurred. *Sanchez*, 149 Idaho at 105, 233 P.3d at 36. "This first step 'involves a wholly retrospective factual question.'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 479 (1972)). When conflicting evidence is presented, this Court defers to the trial court's determination of credibility. *Id.* After a trial court determines that a defendant has violated the terms of his probation, it has discretion in deciding whether to revoke or continue probation. *Id.* This Court will not overturn a trial court's determination absent an abuse of discretion or a lack of substantial and competent evidence to support the trial court's factual findings. *Id.*

If a knowing and intentional probation violation has been proved, a district court's decision to revoke probation will be reviewed for an abuse of discretion. However, if a probationer's violation of a probation condition was not willful, or was beyond the probationer's control, a court may not revoke probation and order imprisonment without first considering alternative methods to address the violation.

5

*Id.* at 106, 233 P.3d at 37 (quoting *State v. Leach*, 135 Idaho 525, 529, 20 P.3d 709, 713 (Ct. App. 2001)). "The state bears the burden of providing satisfactory proof of a violation[,] though proof beyond a reasonable doubt is not required." *State v. Rose*, 144 Idaho 762, 765, 171 P.3d 253, 256 (2007).

The State alleged that Ross violated the following term of his probation: "That you shall commit no violations of any law of the United States of America, or of any law of any other country, or of any law of any state, county, city, or other political subdivision." The district court applied a preponderance of the evidence standard when making its findings that Ross committed both offenses. On appeal, the State contends that the district court properly concluded that Ross committed two violations of law: (1) petit theft, and (2) injury to a child. Each allegation will be discussed in turn.

## A. The district court did not err in concluding that Ross committed the crime of petit theft by a preponderance of the evidence.

In discussing the evidence before it, the district court expressly concluded that it did not find Ross, Vanvalkenberg, Lux, or Bujko to be credible. The district court did, however, find Officer Brazle to be credible. Specifically, the district court relied on Brazle's testimony that Ross began crying when asked whether he took the items from the vape store, stating, "I don't know why anybody on the face of the earth would cry if you took something because you had permission."

On appeal, Ross argues that the witness testimony presented at the evidentiary hearing corroborated that he had permission to take the items. Ross further contends that the district court did not consider Ross's judgment of acquittal resulting from the jury's verdict of not guilty on the petit theft charge. Ross asserts that "[t]he fact that [he] was acquitted of petit theft means that he did not violate his probation" by committing any violation of law. Ross notes that there is "no authority in Idaho for the proposition that a district court can revoke probation based on an allegation that a probationer committed a crime for which he was acquitted." Citing *Commonwealth v. Giliam*, 233 A.3d 863 (Pa. 2020) and *State v. Durant*, 892 A.2d 302 (Conn. 2006), Ross also notes that there is a "lack of uniformity" in other jurisdictions regarding this issue.

In response, the State first notes that by finding Ross, Bujko, and Vanvalkenberg lacked credibility, the district court rejected Ross's version of events. The State next describes the "credible" testimony of Brazle, who saw Ross take the items on the video surveillance and also

6

questioned Ross, who cried when admitting that he took the items. Next, the State attacks Ross's contention that the judgment of acquittal prevented the district court from finding that Ross committed petit theft: "[T]he State does not have to prevail in a criminal trial to prevail on an allegation that a probationer violated probation by committing the same offense."

Citing *State v. Day*, 154 Idaho 649, 651, 301 P.3d 655, 657 (Ct. App. 2013) and *State v. Rose*, 144 Idaho 762, 766, 171 P.3d 253, 257 (2007), the State also notes that it "faces a higher burden [of proof] in a criminal prosecution than at a probation hearing," and that the Idaho Rules of Evidence do not apply at a probation violation hearing. Finally, the State argues that the "vast majority" of jurisdictions have concluded that "an acquittal in a criminal prosecution does not preclude revocation of parole or probation on the same charge." *State v. Martin*, 383 N.E.2d 585, 587 (Ohio 1978) (citing cases from fourteen states).

It is well-settled that the burdens of proof differ between a criminal prosecution and a probation revocation hearing. In a criminal prosecution, the State bears the burden of proving that a defendant committed a violation of law beyond a reasonable doubt. *See State v. Ehrlick*, 158 Idaho 900, 930, 354 P.3d 462, 492 (2015). A probation revocation hearing carries a decidedly lower burden of proof; in this instance, the district court applied a preponderance of the evidence standard.

Here, the district court properly concluded that Ross committed petit theft by a preponderance of the evidence. The first inquiry is whether there was substantial evidence to support the conclusion that Ross violated a term of his probation. *Sanchez*, 149 Idaho at 105, 233 P.3d at 36. If so, the next inquiry is whether the violation justifies revocation of probation. *Knutsen*, 138 Idaho at 923, 71 P.3d at 1070. "A probation decision involves an individualized evaluation of the probationer's personality and circumstances." *Rose*, 144 Idaho at 767, 171 P.3d at 258. "A court is presumed to be able to ascertain the relevancy and reliability of the broad range of information and material presented to it and to disregard the irrelevant and unreliable." *Id.*

The record contains substantial evidence that Ross violated the term of his probation prohibiting him from committing any violation of law. The district court relied on Officer Brazle's testimony, which the district court explicitly found to be credible. Brazle testified that he observed the video surveillance footage which showed Ross take two items from Best Avenue Vapor. Brazle also testified that Ross admitted to him he had taken the items. This Court defers to the trial court's credibility determinations, especially when the record contains conflicting evidence. *Sanchez*, 149

Idaho at 105, 233 P.3d at 36. The parties offered conflicting versions of events regarding the petit theft charge. As such, we defer to the district court's credibility determinations. In finding Brazle credible, the district court did not abuse its discretion in concluding that, by a preponderance of the evidence, Ross committed petit theft.

### B. The district court erred in concluding that Ross committed injury to a child by a preponderance of the evidence.

The district court found that Ross had a "special relationship" with his children based on this Court's decision in *State v. Kraly*, 164 Idaho 67, 423 P.3d 1019 (2018), and concluded that the elements necessary to find a violation of Idaho Code section 18-1501 had been met: "I can't imagine any more significant danger than an unattended one-year-old and unattended three-year-old running across 3rd Street in the middle of the day. I mean it meets the elements of the statute, at least certainly on a more probable than not basis[.]"

On appeal, Ross argues that the district court erred in making this determination because "the State did not present any evidence that he acted willfully in causing or permitting his children to be placed in a dangerous situation, which is a necessary element of the offense." Specifically, Ross contends that the State did not present any evidence as to which of the three adults present in the home were responsible for supervising the children at the time they went outside. Ross asserts the "fact that [he] had a special duty of care for his children does not negate the willfulness element of the statute." Ross argues that the statute requires, "from the standpoint of a reasonable person, knowledge of circumstances likely to result in injury or endangerment of a child before criminal culpability attaches." *See State v. Gonzales*, 158 Idaho 112, 118, 343 P.3d 1119, 1125 (Ct. App. 2015).

In response, the State contends that the "willful" element of the injury to a child statute "does not require that the defendant intended to harm the child, but it does require that the defendant placed the child in a potentially harmful situation with knowledge of the danger." *See State v. Morales*, 146 Idaho 264, 267, 192 P.3d 1088, 1091 (Ct. App. 2008). The State argues that Aragon's testimony that she had spoken to Ross the day before the girls were seen running across the road "established that Ross was aware of the risk that his children could get out of the house by themselves if left unattended."

Idaho Code section 18-1501 provides, in relevant part:

(1) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts

8

thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years.

. . .

(5) As used in this section, "willfully" means acting or failing to act where a reasonable person would know the act or failure to act is likely to result in injury or harm or is likely to endanger the person, health, safety or well-being of the child.

I.C. § 18-1501(1), (5). Thus, in order to commit injury to a child, a person must "willfully cause[] or permit[] such child to be placed in such situation that its person or health is endangered." I.C. § 18-1501(1).

The Idaho Court of Appeals has described section 18-1505(5)'s definition of "willfully" as

encompass[ing] more than performing some act or omission purposefully. It requires, from the standpoint of a reasonable person, knowledge of circumstances likely to result in injury or endangerment of a child before criminal culpability attaches. It does not include mere failure to notice danger, and the fact that a child is ultimately injured or endangered is, by itself, insufficient to convict.

*Gonzales*, 158 Idaho at 118, 343 P.3d at 1125. In *Gonzales*, the Court of Appeals disapproved of a defendant's guilty plea to injury to a child because he was not sufficiently advised that the statute required his conduct to be "willful." *Id.* In making this distinction, the court noted that the defendant's guilty plea "indicate[d] he was admitting only to inattentiveness or simple negligence, not that he willfully committed any act or omission." *Id.*

In contrast, the Court of Appeals has upheld a conviction for injury to a child when a defendant "willfully permitted" a child to be placed in a dangerous situation. *Morales*, 146 Idaho at 267, 192 P.3d at 1091. In *Morales*, a twenty-one-month-old child was brought to the hospital on three separate occasions with severe and extensive injuries. *Id.* at 265–66, 192 P.3d at 1089–90. The child's aunt, uncle, and grandmother insisted the injuries were the result of accidents, but a treating physician testified that the child's injuries were "nonaccidental." *Id.* at 266, 192 P.3d at 1090. Morales, the child's uncle, was allegedly present during one occasion where the child was hurt. *Id.* The court concluded that because Morales permitted the child to be placed in a situation endangering his health and because he knew of the danger, substantial evidence supported his conviction for injury to a child. *Id.* at 268, 192 P.3d at 1092.

In this case, the district court heard testimony from Aragon that she had spoken to Ross on November 13, 2019, about failing to supervise his children when they exited their residence through the back door. Aragon testified that she spoke to Ross and Tottenham, who told her that the children had accidentally gone outside alone through the sliding glass door, but that it would not happen again. One day after this conversation, Aragon returned to speak with Ross and Tottenham after the children had again gone outside through the sliding glass door and crossed a busy road.

Despite the inherent dangerousness of two small children crossing a busy road without parental supervision, we are not persuaded that Ross's conduct, as set forth in the record, rises to the level of "willful" as it is defined in Idaho Code section 18-1501(5). Like the defendant in *Gonzales*, whose act was akin to "simple negligence," here, Ross's act (or omission) at most only rises to the level of negligence. There were at least two other adults in the home at the time of the incident. At the probation violation hearing the State elicited testimony that, after working until approximately 1 a.m. that morning, Ross admitted to being asleep when the girls left the residence and crossed the road. The State did not elicit any other evidence concerning what Ross knew before he went to bed, such as which of the three adults in the home was responsible for watching the girls, or whether the three adults had even discussed who was responsible for watching the girls in light of the events of the prior day. It cannot be said that Ross reasonably should have known that his act or omission (sleeping) was "likely to result in injury or harm [to the children]" without more evidence that he should have known the children would not be supervised by someone else while he slept. I.C. § 18-1501(5). Regardless of whether Ross engaged in an act or omission *purposefully*, we cannot say that he had "knowledge of circumstances *likely* to result in injury or endangerment of a child." *Gonzales*, 158 Idaho at 118, 343 P.3d at 1125 (italics in original).

In addition, the district court did not discuss the willfulness element in concluding that Ross committed injury to a child. Rather, the district court focused on the "special relationship" Ross had with the children. Instead of focusing on the willful element, the district court honed in on the dangerousness of the situation. In determining whether to revoke Ross's probation, the district court stated:

> I think the facts of this case are – the probation violation is really horrible. I mean I just – I'm shocked by what happened with these two children going across 3rd Street and going to [the attorney's] office, and especially in light of what happened just recently before I just don't understand how that could happen, and *obviously*

10

*the blame is not entirely on you*, but between you and the child's mother – children's mother there's blame, and whether you were asleep or incoherent for other reasons, it doesn't matter to me.

(Italics added.)

As we have acknowledged, the children were certainly in a dangerous situation, but that realization does not end our inquiry. The statute requires culpability specifically attributable to Ross. The district court acknowledged that the children's mother (whom it also concluded had a special relationship to them) was also present in the house when the children left through the sliding glass door and was also to blame for the children going outside without supervision. There was no evidence presented concerning which of the three adults in the home was responsible for putting the children in harm's way. The district court essentially found Ross vicariously culpable for Tottenham's behavior as well as his own. This is not the kind of "willfulness" contemplated by the statute. As such, we conclude the district court's determination that Ross willfully committed injury to a child was not supported by substantial evidence. This is true even under the lower preponderance of the evidence standard. Therefore, the district court incorrectly revoked Ross's probation on this allegation.

## C. The case is remanded for a new probation violation hearing.

Finally, Ross argues on appeal that the proper remedy is remand if *either* alleged probation violation was not supported by substantial evidence. Because the State did not challenge this argument, the case is remanded for a new probation violation hearing. We cannot conclude from this record whether Ross's probation would have been revoked absent a finding that he committed injury to a child.

## IV. CONCLUSION

For the reasons set forth above, we reverse the district court's order revoking Ross's probation. The case is remanded for additional proceedings consistent with this opinion.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.

11