# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48895

| | |
|---|---|
| In the Interest of: John Doe (2021-29), Juvenile Under Eighteen (18) Years. | ) ) |
| STATE OF IDAHO, | ) ) |
| Petitioner-Respondent, | ) **Filed: July 1, 2022** ) |
| v. | ) **Melanie Gagnepain, Clerk** ) ) |
| JOHN DOE (2021-29), | ) **THIS IS AN UNPUBLISHED** ) **OPINION AND SHALL NOT** ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Jonathan Brody, District Judge, and Mick D. Hodges, Magistrate.

Order of the district court, on intermediate appeal from the magistrate court, affirming order finding probation violation, revoking probation, and directing execution of previously suspended sentences, <u>reversed</u>; and <u>case remanded</u>.

Parmenter Rivera LLP; Nathan D. Rivera, Blackfoot, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C McKinney, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

John Doe appeals from the district court's order, on intermediate appeal, affirming the magistrate court's order revoking probation and executing Doe's previously suspended sentence after finding Doe violated probation. Doe argues the district court erred by: (1) finding substantial evidence supported the magistrate court's determination that Doe violated probation; (2) finding the magistrate court properly revoked probation; and (3) affirming the magistrate court's execution of an excessive sentence. The magistrate court's finding that Doe violated his probation is not supported by substantial evidence. Additionally, the magistrate court abused its discretion in executing the previously suspended sentence. Consequently, the district court's order affirming

1

the magistrate court's order revoking probation and executing Doe's previously suspended sentence after finding Doe violated probation is reversed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, pursuant to a plea agreement, Doe pleaded guilty to one count of attempted rape, Idaho Code § 18-6101, and three counts of lewd conduct with a minor under sixteen (16) years of age, I.C. § 18-1508. The magistrate court ordered a commitment to the Department of Juvenile Corrections (Department) for an indeterminate amount of time, not to exceed Doe's nineteenth birthday, unless the Custody Review Board determined Doe should remain in the custody of the Department until Doe's twenty-first birthday. Upon release from the Department in June 2019, Doe was placed on probation for three years. As a term of probation, Doe was prohibited from entering Minidoka County and Cassia County ("Mini-Cassia") without notifying his probation officer.

In January 2020, a counselor at Minico High School in Minidoka County completed a written statement in which he stated "sometime between Thanksgiving and Christmas [of 2019], to the best of my recollection, I observed [Doe] on our campus and specifically in the building." Doe had not received permission from his probation officer to enter Minidoka County during the time frame the counselor referenced. As a result, the State filed a probation violation against Doe alleging two violations. First, the State alleged that Doe violated Condition 8 of the standard terms of probation which, in relevant part, required Doe to "make arrangements with the parents or guardians prior to leaving the home. The parents/guardians shall, at all times, know and approve of the whereabouts and companions of the juvenile."[1] The State alleged Doe violated the condition

---

[1] Condition 8 reads as follows:

That the juvenile shall make arrangements with the parent/guardian prior to leaving the home. The parent/guardian shall, at all times, know and approve of the whereabouts and companions of the juvenile. The Probation Officer may restrict the juvenile's association with persons deemed to be an inappropriate influence. The juvenile shall not spend the night at any friend's house while on probation. That the juvenile shall have no contact with gang members or other juveniles or adults on probation and shall have no drug or gang-related paraphernalia, or violent video games. Any and all gang and drug paraphernalia, including but not limited to, items of clothing, belts, posters, . . . will be confiscated by the Probation Department. Upon release of the juvenile from probation, items will be returned to the parent/guardian, if requested in writing, within 15 days of the juvenile's release

by going to Minico High School between the dates of November 25, 2019, and December 25, 2019, "without the knowledge of his parents or his Probation Officer." Second, the State alleged that Doe violated a condition of the amended decree and order of disposition. That condition reads as follows: "[Doe] shall give a 48 hour notice to the Mini-Cassia Juvenile Probation Department BEFORE coming into either Minidoka or Cassia County." The State alleged Doe violated this condition because "This Probation Officer had no knowledge of [Doe] being in the area during this time and had no knowledge of [Doe] being at Minico High School, which he was restricted from being at."

The magistrate court held an evidentiary hearing on the allegations. At the hearing, the counselor testified that Doe had been a student at Minico High School and that prior to his alleged presence at the school in late 2019, the counselor had not seen Doe since January 2018. Initially, the counselor testified that Doe was at the high school "prior to Thanksgiving in 2019." The prosecutor then tried to clarify the date, asking, "maybe you had indicated on a prior occasion that it was sometime between Thanksgiving and Christmas." The counselor then testified, "Well, I know it was somewhere in there." During cross-examination, the counselor testified that he did not know the exact date he saw Doe but "it was either before Thanksgiving or right between Thanksgiving and Christmas." However, the counselor also acknowledged that due to either the aging process or an illness, his "memory isn't quite as sharp as it was."

The counselor also testified that he saw Doe standing in the hallway of the high school where he appeared to be waiting for someone or waiting to talk to the attendance secretary. The counselor testified that he distinctly remembered saying, "Hey, [Doe], how you doing?" and Doe said, "I'm good." When asked if there was any doubt in his mind that he saw Doe at the high school, the counselor answered, "No, there's no doubt." The counselor also testified that Doe's older brother, Jorge, had been a student at another high school where the counselor worked before he worked at Minico High School. The counselor testified that Doe and Jorge "are similar," but he had not seen Jorge for two or three years. However, the counselor acknowledged that in his written statement made in January 2020, he did not indicate that he addressed the person he saw by Doe's name, but he did not know why he did not include that in the written statement. In his written statement, the counselor also indicated that in order to confirm whether he saw Doe, the

date. After the 15-day period has expired, the items will be destroyed, if return has not been requested by the parent/guardian.

3

counselor spoke with the attendance secretary present the day Doe was alleged to be on campus. The counselor showed the attendance secretary a photo of Doe in an effort to identify him, but the attendance secretary did not recognize Doe. The secretary also did not remember Doe or why Doe would have been at the school.

Brandy Simmons, Doe's probation officer, testified that Doe was required to obtain permission from the probation office before entering the Mini-Cassia area and that Doe had requested and received permission on multiple occasions. Simmons testified that Doe did not request permission to go to the Mini-Cassia area or Minico High School at any time during November or December 2019. She was surprised, but unconcerned, by the allegation that Doe had been at the high school because Doe had been good about communicating with her and asking for permission to be in the Mini-Cassia area and had passed a polygraph examination about whether he had been at the high school. Simmons testified that aside from the alleged violation, Doe had completed all the terms and conditions of his probation and done well.

Bret Wright, a juvenile probation officer in Minidoka County, testified that Doe had taken two polygraph examinations and was specifically asked whether he had complied with all conditions of probation. Each time, Doe passed the examination. Wright also testified that when he asked Doe about the alleged violation, Doe adamantly denied ever being near Minico High School.

Jorge testified that on October 29, 2019, he went to Minico High School to pick up his cousin at his wife's request. Defense Exhibit 2, a copy of electronic messages between Jorge's cousin and Jorge's wife, supports this testimony. Jorge testified that while he was waiting for his cousin, he saw the counselor who asked him, "Hey, how is it going?" and Jorge responded, "Good." Jorge testified that the counselor asked what he was doing at the school, and Jorge explained that he was there to pick up his cousin. Jorge said that the counselor did not address him by a specific name. Jorge explained "it takes [the counselor] a while to remember who we are because he has so many students, so it takes him a while to remember our names." Jorge testified that every time he saw the counselor, the counselor would say "Hey, how is it going?" or "Hey, how you doing?" Jorge testified that if the counselor had addressed him by Doe's name, he would have corrected him. Jorge's fiancé and cousin testified, and their testimony corroborated Jorge's testimony and the electronic messages.

4

Doe testified that he understood the conditions of his probation and had sought permission from his probation officer every time he wanted to travel to the Mini-Cassia area, as required. Doe stated multiple times that he had not been at Minico High School or in the Mini-Cassia area without permission. During closing argument, Doe's counsel argued the counselor had mistaken Jorge for Doe. Doe's counsel further argued that the mistaken identity was the only evidentiary support for the probation violation allegations and that the counselor was not credible.

The magistrate court acknowledged that Doe and Jorge look similar but ultimately concluded Doe violated his probation. At a subsequent disposition hearing, the magistrate court found that Doe violated both terms of his probation as alleged, and the court revoked probation, and executed Doe's previously suspended detention time of 621 days. Doe appealed, arguing the magistrate court lacked substantial evidence to support finding a probation violation, abused its discretion by failing to cite the proper standard when revoking Doe's probation and executing his sentence, and abused its discretion by executing a sentence that was excessive and/or inappropriate given the violation alleged. Doe also filed a motion for release pursuant to Idaho Criminal Rule 46(d), and the magistrate court released Doe from custody on his own recognizance pending the outcome of his appeal.

The district court affirmed the magistrate court's order, finding substantial evidence supported the magistrate court's determination that Doe violated his probation. The district court noted that Doe failed to provide a transcript of the disposition hearing and, therefore, the court was required to presume the transcript would support the disposition. Accordingly, the district court found that the magistrate court did not abuse its discretion in revoking probation and executing Doe's suspended sentence. Doe timely appealed.

## II.

### STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Thus, we review the magistrate court's findings and conclusions, whether

5

the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

## III.

## ANALYSIS

Doe alleges the district court erred in affirming the magistrate court because the magistrate court lacked sufficient evidence to support finding a probation violation and because the magistrate court abused its discretion when it revoked Doe's probation and ordered execution of a sentence that was excessive and/or inappropriate given the violation alleged. In response, the State asserts Doe has failed to show error in the district court's decision affirming the magistrate court's revocation of Doe's probation and order executing Doe's sentence.

Review of a probation revocation proceeding involves a two-step analysis. *State v. Garner*, 161 Idaho 708, 710, 390 P.3d 434, 436 (2017). First, we determine whether the terms of probation were violated. *Id.* If they were, we then determine whether the violation justifies revocation of the probation. *Id.* With regard to the first step, a trial court may revoke probation only upon evidence that the probationer has violated probation. *State v. Ross*, 170 Idaho 58, 62, 507 P.3d 545, 549 (2022). A court's finding that a violation has been proved will be upheld on appeal if there is substantial evidence in the record to support the finding. *Id.*

As to the second step, the decision whether to revoke a defendant's probation for a violation is within the discretion of the district court. *Id.* Thus, we review a district court's decision to revoke probation under an abuse of discretion standard. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

In the event of conflicting evidence of the alleged violation, this Court will defer to the trial court to determine the credibility of witnesses. *See State v. Barton*, 119 Idaho 114, 118, 803 P.2d 1020, 1024 (Ct. App. 1991); *State v. Roy*, 113 Idaho 388, 390-91, 744 P.2d 116, 118-19 (Ct. App. 1987). We will not set aside a trial court's credibility determination unless it is not supported by substantial and competent evidence. *Ross*, 170 Idaho at 62, 507 P.3d at 549.

6

We note, although Doe argues on appeal that the State failed to establish a probation violation by a preponderance of the evidence, that is not the standard. The standard is whether there was substantial evidence of a violation. *State v. Lafferty*, 125 Idaho 378, 381, 870 P.2d 1337, 1340 (Ct. App. 1994). Regardless of the standard applied, Doe asserts the evidence was "woefully insufficient" to support a conclusion that he violated his probation.

The first step in the analysis of a probation violation involves a wholly retrospective factual question. *State v. Sanchez*, 149 Idaho 102, 105, 233 P.3d 33, 36 (2009). When conflicting evidence is presented, this Court defers to the trial court's determination of credibility so long as the determination is supported by substantial and competent evidence. *Id.*

There is no evidence in the record to support the magistrate court's finding that Doe committed the first alleged violation--violating Condition 8 of his probation. First, Condition 8 did not restrict Doe from being in the Mini-Cassia area, or from being at Minico High School; instead, it generally limited the people with whom Doe could have contact and the kind of material Doe could have. To the extent there was a restriction on where Doe could be geographically, the only restriction was that his parents or guardian know and approve of Doe's whereabouts and companions. Second, Condition 8 does not require that Doe's *probation officer* know or approve of Doe's whereabouts. Instead, it requires *Doe's parents or guardians* to be apprised of and approve of Doe's whereabouts. Thus, to establish that Doe violated Condition 8, Doe's parents had to testify that Doe had gone somewhere without their knowledge or approval. No such testimony exists in the record. Thus, there is no evidence to support the magistrate court's conclusion that Doe violated Condition 8.

As to the second allegation, the magistrate court heard conflicting evidence from Doe, Jorge, Doe's probation officer, and the counselor regarding Doe's alleged presence at the high school without having given prior notice to the probation department. In light of that conflicting evidence, we defer to the credibility findings by the trial court if such findings were made. In this case, the magistrate court made no explicit findings about which witnesses were more credible. The magistrate court's credibility findings, in their entirety, are as follows:

> I don't think [Doe's] family's lying. I think the family would do what they could to get [Doe] out of this mess.
> I'm not saying that they're lying, but I do--I do find [the counselor is] an unbiased witness who was absolutely certain of his identification of [Doe].
> . . . .

7

I think [the counselor] properly ID'd [Doe] at the high school when he wasn't supposed to be there based on the testimony I've heard today.

The magistrate court's conclusion that Doe violated the specified terms or conditions of probation would have necessarily required weighing the credibility of the witnesses. However, the magistrate court did not address the credibility of Doe or Doe's probation officer or make explicit credibility findings that support its decision. It did not find Doe's family not credible, but rather the court stated twice it did not think the family (Jorge, his wife, and his cousin presumably) were lying. Likewise, it did not think the counselor was lying, stating the counselor was "absolutely certain of his identification." Essential to this case's resolution, however, was weighing the testimony of all the witnesses to determine whether the counselor saw Jorge or whether he saw Doe, which the court did not do. The court could have resolved the conflicting testimony by concluding that the counselor must have both seen Jorge and seen Doe at different times, but instead it expressly found "I don't know if two events took place." Absent finding two events took place, the court had to weigh the credibility of the witnesses to find the counselor was more credible in order to conclude that Doe violated his probation. In that regard, the magistrate court did not make any explicit findings regarding which witness(es) it found most credible. Even if we could conclude the magistrate court implicitly found the counselor to be more credible, that implicit finding is not supported by substantial and competent evidence.

A credibility determination, like other factual determinations, must be set aside if it is not supported by substantial and competent evidence and is therefore, clearly erroneous. *See Stuart v. State*, 127 Idaho 806, 813, 907 P.2d 783, 790 (1995). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *State v. Hess*, 166 Idaho 707, 710, 462 P.3d 1171, 1174 (2020). Here, the counselor was the sole witness who testified to seeing Doe at the high school, and his testimony on the two critical elements--whether Doe was at Minico High School and on what date--was repeatedly undermined.

As to the dates that Doe was allegedly at the high school, the counselor initially testified it was prior to Thanksgiving of 2019. The probation violation allegation stated that Doe was at the high school sometime between November 25 and December 25, 2019. This Court can take judicial notice of the fact that the Thanksgiving Holiday was November 28, 2019, leaving, at most, November 25, 26, or 27 for Doe to be at the high school prior to the date on which the school would have released the students for the Thanksgiving holiday recess. Aside from the counselor's initial testimony which the counselor later contradicted, the record does not contain substantial

8

and competent evidence to support a finding that Doe was at the high school during those days. If Doe was allegedly present at the high school between "Thanksgiving and Christmas 2019," the time period during which Doe could have been at the high school is further limited because the evidence indicates that Doe left on December 11, 2019, to go to Mexico for two weeks, returning "right before New Year's Eve." Again, the record lacks substantial and competent evidence to support a finding that Doe was at the high school during the dates he was not in Mexico and the high school would have been open: December 2-6, 2019, and December 9-10, 2019.

In addition to the very limited dates on which Doe could have been at the high school and the counselor's lack of specificity of the dates, the counselor's testimony was inconsistent with his written statement. The counselor acknowledged this discrepancy; admitted his memory had declined; stated he was unable to recall exactly when Doe was allegedly present at the high school; and when pressed on the dates, stated, "And, honestly, I don't specifically remember. . . . And like I said, it may have been between Thanksgiving and Christmas. All I know is that I remember seeing [Doe] standing there in the hallway."

Not only was the counselor unsure of the date Doe was alleged to have been at the high school, but his identification of Doe was also unsupported by substantial evidence. As noted, the counselor's memory was compromised by age and recent illness. The counselor's written statement, which was completed in January 2020, less than two months after the event, did not indicate that the counselor addressed Doe by name. Nonetheless, the counselor testified: "I remember distinctly saying, 'Hey, [Doe], how you doing?'" This testimony was further undermined by his written statement, wherein he stated he attempted to confirm his identification of Doe by showing the attendance secretary a photograph of Doe, but the attendance secretary did not recognize Doe and could not confirm the counselor's identification of Doe as someone who had been at the school during either time frame.

In contrast, Doe's probation officer testified that Doe consistently sought approval for traveling to the Mini-Cassia area before going there, Doe successfully completed all the terms of his probation, and she was surprised that Doe would travel to Minico High School without permission in light of Doe's previous behavior of seeking approval for such travel. Doe denied going to Minico High School and twice passed a polygraph test on whether he complied with the terms of his probation. Finally, Jorge's testimony, corroborated by the electronic messages, is not only consistent with the counselor's testimony regarding the counselor's failing memory (which

9

explained why he did not address Jorge by name), but also corroborates Doe's testimony and theory--that it was Jorge, not Doe, who the counselor saw at the attendance office. In light of the above, we cannot say there was substantial evidence to support either an explicit or implicit finding that the counselor was either "absolutely certain" of his identification of Doe or more credible than other witnesses. Consequently, the magistrate court's conclusion that Doe violated his probation is unsupported by the evidence and must be vacated.

Additionally, the magistrate court's determination that Doe violated his probation appears to be based, in part, on its memory of prior proceedings. Defense counsel argued in closing that it was "baffling" that Doe, who had done very well on probation, would risk a probation violation and incarceration by going to a high school where everyone knew who he was. The magistrate court responded to this comment by relying on its memory of a pretrial circumstance where Doe was alleged to have gone to a coffee shop and was visiting with two minors, "which amazed [the court]. Everybody knew him, and he did the same thing." This comparison is inconsistent with legal standards because the court cannot base its decision on its memory of prior events in the criminal proceeding, *Matthews v. State*, 122 Idaho 801, 808, 839 P.2d 1215, 1222 (1992) (district court may not take judicial notice of prior reported but untranscribed testimony), and because there was no evidence presented that Doe "did the same thing" both times. Additionally, in addressing whether this was a case of mistaken identity, the court found, "I looked at [Doe and Jorge.] They are similar, they're not exact. And I think they can be told apart. They look different." The district court inappropriately relied on its own evaluation of the brothers' personal appearances to resolve the factual issue of Doe's identification as the individual at Minico High School. The issue was not whether the district court could distinguish Doe from Jorge, but rather, whether there was substantial and competent evidence to support the counselor's identification of Doe. With no evidence to support the finding that Doe committed the first probation violation allegation, and with insufficient evidence to support finding Doe committed the second allegation, the magistrate court erred in finding Doe violated the terms of his probation.

Following its determination that Doe violated the terms of his probation, the magistrate court held a disposition hearing. The State argues that because the district court was not provided with a transcript of the probation violation disposition hearing, this Court cannot consider the transcript of the disposition hearing on appeal despite its inclusion in the record. We disagree. On intermediate appeal, this Court reviews the record to determine whether there is substantial and

10

competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Korn*, 148 Idaho at 415, 224 P.3d at 482. As such, we must review the disposition hearing to determine whether the magistrate court acted within its discretion when revoking probation. That review properly includes a transcript of that proceeding.

At the disposition hearing, a mother of one of the named victims testified.[2] Following the testimony and arguments, the State requested that Doe's probation be revoked while Doe requested that he be permitted to continue on probation. After Doe's request to remain on probation, the magistrate court did not address the various disposition options or even explicitly find that the nature of the probation violations justified revoking probation. Instead, the magistrate court executed the previously suspended sentence, explaining: "Thank you [Doe's attorney]. The number of days, if divided by 20 or 22 different young girls, is no[t] so much per girl, as [the witness] pointed out." The magistrate court continued: "The concern--one concern I have is not just the protection of a community, but when you have 20 aggrieved--or 22, however many it was--families who are violently offended by what this boy did to their relatives, it's for his own protection."

The magistrate court erred in revoking probation because there was not substantial evidence of a probation violation, there is nothing in the record indicating the magistrate court had any other basis to revoke probation, and there is no indication that the decision to revoke probation was reached by an exercise of reason. Consequently, the magistrate court erred in revoking Doe's probation and we need not further address whether the magistrate court erred in executing the previously suspended sentence.

---

[2]     In part, the victim's mother testified that she was at the disposition hearing "in the hopes of protecting just one child from going through the traumatization that these 22 girls survived." There is nothing in the record indicating that Doe traumatized "22 girls," as Doe was only charged with criminal conduct involving four of the disclosed victims; instead, this information came from an amended psychosexual evaluation that Doe participated in while in treatment. Doe argues that this confidential information was inappropriately given to the witness and impacted the magistrate court's decision to execute the previously suspended sentence. Because we conclude that the magistrate court erred in revoking probation, we need not address Doe's arguments regarding the execution of the previously suspended sentence.

Because the magistrate court erred, the district court similarly erred in affirming the magistrate court's order. This Court reverses the district court's order affirming the magistrate court's order revoking probation and executing Doe's previously suspended sentence after finding Doe violated probation, and remands the case for further proceedings consistent with this opinion.

**IV.**
**CONCLUSION**

The magistrate court's finding that Doe violated probation is not supported by substantial evidence. The magistrate court abused its discretion in revoking probation and executing the previously suspended sentence. Accordingly, the district court's order affirming the magistrate court's order revoking Doe's probation and executing his previously suspended sentence is reversed, and the case is remanded for further proceedings consistent with this decision.

Chief Judge LORELLO and Judge BRAILSFORD **CONCUR**.