# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51416

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: March 26, 2026** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| RAYMOND CORONA RUBALCABA, III, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven J. Hippler, District Judge.

Order revoking and reinstating probation, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kierra W. Mai, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Raymond Corona Rubalcaba, III appeals from the district court's order revoking and reinstating his probation. Rubalcaba argues the district court erred in finding he willfully violated his probation. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Rubalcaba pled guilty to grand theft by possession. Idaho Code § 18-2403(4). The district court imposed a unified ten-year sentence with two years determinate, suspended the sentence, and placed Rubalcaba on probation for a period of ten years. As a condition of probation, Rubalcaba was required to complete the Ada County Mental Health Court program and take medications as prescribed. Rubalcaba received an injectable antipsychotic medication, Invega, once a month from his provider. In 2019, the district court revoked Rubalcaba's probation after

1

finding he had absconded from supervision and changed residences without permission. The district court later reinstated probation. In 2021, Rubalcaba was prescribed an oral Invega pill to manage mental health symptoms between injections, to be taken "as needed."

In 2023, Willie Cunningham, Rubalcaba's grandfather with whom he lived, contacted Rubalcaba's probation officer to report that he had kicked Rubalcaba out of the house after an argument and he believed Rubalcaba was not taking his medications. Rubalcaba was later arrested on an agent's warrant for alleged probation violations. The State alleged Rubalcaba failed to obtain permission before changing residences and failed to take his prescribed medications as ordered by the court. Rubalcaba denied the allegations, and the matter proceeded to an evidentiary hearing. Following the evidentiary hearing, the district court found Rubalcaba willfully violated the two probation conditions at issue. The district court revoked probation but reinstated it with additional conditions. Rubalcaba appeals.

## II.

## STANDARD OF REVIEW

The decision to revoke probation is reviewed for an abuse of discretion. *State v. Rose*, 144 Idaho 762, 765, 171 P.3d 253, 256 (2007). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Rubalcaba argues the district court lacked substantial evidence to conclude that Rubalcaba willfully violated his probation by: (1) not taking his prescribed medication "as needed," and (2) not providing notice of change of address when Rubalcaba was involuntarily kicked out of his residence. The State responds that the record and applicable law support the district court's revocation of Rubalcaba's probation because there was substantial evidence that he willfully violated his probation. We hold Rubalcaba has failed to show the district court erred in revoking his probation.

Probation may be revoked only upon a finding that the defendant willfully violated a condition of probation, or an admission by the defendant. Idaho Criminal Rule 33(f). Review of a trial court's decision to revoke probation is a two-step process. *State v. Ross*, 170 Idaho 58, 62, 507 P.3d 545, 549 (2022). First, the appellate court determines whether the terms of probation have been violated because a trial court may only revoke probation upon evidence that the probationer has violated the terms of probation. *Id.* A finding that a probation violation has been proved and that it was willful will be upheld on appeal if there is substantial evidence in the record to support the finding. *Id.*; *see also State v. Garner*, 161 Idaho 708, 710-712, 390 P.3d 434, 436-438 (2017). The State bears the burden of proof of a violation, although proof beyond a reasonable doubt is not required. *Rose*, 144 Idaho at 765, 171 P.3d at 256.

Second, after confirming a willful violation occurred, the appellate court determines whether the violation justifies revocation of the probation. *Ross*, 170 Idaho at 62, 507 P.3d at 549. The trial court has the discretion in deciding whether to revoke or continue probation after finding that the defendant has violated the terms of probation, and the appellate court "will not overturn a trial court's determination absent an abuse of discretion or lack of substantial and competent evidence to support the trial court's factual findings." *Id.*

A. **Mootness**

As an initial matter, the State argues this appeal is moot because Rubalcaba was reinstated on probation. A case becomes moot when the issues presented are no longer live or the defendant lacks a legally cognizable interest in the outcome. *Murphy v. Hunt*, 455 U.S. 478, 481 (1982); *Bradshaw v. State*, 120 Idaho 429, 432, 816 P.2d 986, 989 (1991). Even where a question is moot, there are three exceptions to the mootness doctrine: (1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest. *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010).

Here, Rubalcaba was found to have willfully violated the conditions of his probation, a disposition that will remain in his criminal history. That criminal history may be relied upon by Rubalcaba's probation officer for future sanctions. In addition, the finding of willful violations may become a factor in a judicial decision regarding future probation revocations or potential early

release from probation. As a result, the collateral consequences exception to the mootness doctrine applies and the issue raised by Rubalcaba on appeal is not moot.

**B.      Failure to Take Prescribed Medications**

A condition of Rubalcaba's probation required that he take all medications at the rate and in the dosages as prescribed to him for any mental health condition. As noted above, Rubalcaba was receiving injections of Invega for mental health. Rubalcaba was also prescribed an oral Invega pill to manage mental health symptoms as needed between injections. In August 2023, Rubalcaba's probation officer arrested him and searched his backpack. The probation officer found a bottle of Invega pills that was issued in June 2023, but only one of the thirty prescribed pills had been removed. At the evidentiary hearing, Rubalcaba testified he had only taken one pill from the bottle.

However, after receiving the June prescription and before his August arrest, Rubalcaba was experiencing symptoms which the oral prescription was intended to address. Rubalcaba testified he knew he was beginning to have symptoms, and yet did not take his medication. On direct examination Rubalcaba stated:

Q.    Okay. So let's think back to July 2023, so July of just this past summer.
A.    Okay.
Q.    Can you think about what time period I'm thinking of or talking about?
A.    The beginning of July?
Q.    Yes.
A.    Okay.
Q:    How were you feeling mentally at that time?
A.    At that time, I was very anxious. I was--I remember talking to my grandmother quite a bit. I think she got the blunt end of it. I had a lot of racing thoughts, and I was needing to vent to my grandma quite a bit before me and my grandfather got into the argument.
Q.    So when you say you felt you were beginning to have symptoms, what do you mean by symptoms?
A.    Paranoia and racing thoughts and perhaps mild outbursts, nothing too crazy, but mild outbursts. Once I start to get over anxious, then that's when the schizophrenia--it feels like when the schizophrenic stuff starts to surface.

Additionally, Cunningham, Rubalcaba's grandfather, informed Rubalcaba's probation officer that Rubalcaba was very delusional, and Cunningham believed Rubalcaba had stopped taking his medications. Cunningham also stated Rubalcaba had become delusional, and that he "gets delusional when he is not taking his medication." Rubalcaba's probation officer testified that she spoke to Rubalcaba about the importance of taking the prescription when he starts

4

becoming symptomatic. The district court held Rubalcaba "did willfully fail to take his medications prescribed to him for his mental health condition that is required, and that is a violation of his probation."

Rubalcaba argues the district court erred in finding he willfully violated the condition of probation that he take all medications as prescribed. Rubalcaba contends that because the pill bottle read, "take one tablet by mouth every day as needed," the phrase "as needed" means as needed according to Rubalcaba and implies that it is up to Rubalcaba himself to determine when he takes the medication.

This argument is unpersuasive. Rubalcaba knowing he "needed" to take a pill when he recognized the onset of symptoms of his schizophrenia and choosing whether to do so are two different things. The record shows Rubalcaba knew he was beginning to experience symptoms of schizophrenia, and he "needed" to take a pill, but still chose not to do so. Rubalcaba does not argue he was incompetent to decide to take or not take the medication, or, in other words, incapable of making a decision whether to take the medication or not. Rubalcaba only argues he should have the sole decision-making power of when he takes his medication, even if he knows he is suffering from a mental health condition and would benefit from the medication.

Rubalcaba's testimony shows he knew he was starting to have symptoms from his schizophrenia in July 2023. Rubalcaba acknowledged he was beginning to "get over anxious" and "that's when the . . . schizophrenic stuff starts to surface." Yet, Rubalcaba still did not take his prescribed medication, and his symptoms escalated. Rubalcaba had spoken with his probation officer about the importance of the medication, recognized he was getting into a state where he would need to take his medication, and yet still did not take the medication. This led to the argument between Rubalcaba and his grandfather, which led to Rubalcaba being kicked out of his grandparent's house. This situation is the precise circumstance that taking the medication as needed, or when symptoms arise, was intended to address between injections.

The fact that the medication was prescribed "as needed" does not preclude a finding of willfulness where the evidence shows that Rubalcaba understood when the medication was needed and chose not to take it. The district court did not err in concluding Rubalcaba willfully violated this condition of probation.

5

C.    **Failure to Obtain Permission Before Changing Residences**

As noted, Rubalcaba lived with his grandparents and Rubalcaba's grandfather kicked him out of the house after an argument in July 2023. A condition of Rubalcaba's probation required him to reside at a location approved by his probation officer and to obtain permission before changing residences. Specifically, the condition stated: "Residence: I will reside in a location approved by my Probation/Parole officer. I will not change my approved place of residence without first obtaining permission from my Probation/Parole officer." Rubalcaba argues it was impossible for him to get prior permission to change residences when he was "thrown out" of his current housing situation.

The State alleged Rubalcaba violated his probation by changing residences without notifying his probation officer. The State alleged:

> Failing to obtain permission from his supervising officer before changing residences, to-wit: on or about the 5th day of August 2023, the defendant's supervising officer left the defendant a voicemail directing him to contact [her] back and to provide an address of where he was residing as he had been kicked out of his grandparents' home. On or about the 9th day of August 2023, the defendant refused to provide an address. Furthermore, the defendant's supervising officer directed him to reside at the River of Life, but he failed to comply.

Rubalcaba argues that being kicked out of his approved residence at his grandparents was "beyond his control." Rubalcaba argues a non-willful violation is one that is "beyond the probationer's control." *State v. Leach*, 135 Idaho 525, 529, 20 P.3d 709, 713 (Ct. App. 2001). Rubalcaba's argument primarily rests on the assertion that he could not have provided notice "before" changing residences in the situation where he was suddenly kicked out.

While the State did reference "before" changing residences in the allegation set out above, the substance of that allegation refers to failing to provide notice after Rubalcaba was kicked out. The State alleged Rubalcaba violated his probation for failing to provide an address of where he was residing, and he was directed to reside at River of Life but failed to comply. Thus, Rubalcaba's argument that his probation was violated because he did not provide prior notice of moving out of his grandparents' house is disingenuous. Rubalcaba was removed from his grandparents' home in the middle of July. The probation violation allegation notes Rubalcaba's probation officer gave him until early August to find new housing and update the probation officer with an address. This allegation does not necessarily fault Rubalcaba for not getting permission prior to changing

6

residences but rather that he failed to update his probation officer after he was kicked out and, more importantly, at her direction that he do so.

Consistently, the district court held Rubalcaba violated his probation, stating that Rubalcaba "was essentially thrown out of his housing because of the interaction he was having with his grandfather," and that he "failed to keep the department appropriately abreast of his location and have permission to be staying where he was." The district court also appropriately focused on Rubalcaba's failure to update his probation officer of his new residence after being kicked out. Rubalcaba does not contest that he failed to provide notice of where he was staying after he was kicked out of his grandparent's house.

Rubalcaba has shown no error in the district court's determination that he willfully violated his probation by failing to notify his probation officer of relocating to a new residence and keeping his probation officer abreast of where he was residing. Substantial evidence supports the district court's finding that Rubalcaba willfully failed to comply with this condition of probation.

## IV.

## CONCLUSION

Substantial and competent evidence in the record supports the district court's finding of willful probation violations. The district court's order revoking and reinstating Rubalcaba's probation is affirmed.

Chief Judge TRIBE and Judge HUSKEY **CONCUR**.